UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK ABELINO MARCELENO,<br><br>　　　Plaintiff,<br><br>　　vs.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>　　　Defendants | 1:17-cv-01136-LJO-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED WITH PLAINTIFF'S CLAIMS FOR EXCESSIVE FORCE, ASSAULT, AND BATTERY AGAINST DEFENDANT MORA, AND THAT ALL OTHER CLAIMS BE DISMISSED FOR FAILURE TO STATE A CLAIM**<br>**(ECF No. 19.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

## I. BACKGROUND

Erik Abelino Marceleno ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On August 23, 2017, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) The court thereafter screened the Complaint pursuant to 28 U.S.C. 1915A, and issued an order on June 27, 2018, requiring Plaintiff to either 1) file an amended complaint, or 2) notify the court of his willingness to proceed only with an excessive force claim against defendant Sergeant J. M. Mora. (ECF No. 18.) On July 30, 2018, Plaintiff filed the First Amended Complaint, which is now before the court for screening. (ECF No. 19.)

1

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at California State Prison-Sacramento in Represa, California. The events at issue in the Complaint allegedly occurred at Wasco State Prison in Wasco, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names one defendant, Sergeant J. M. Mora (Transportation Officer, CDCR Holdings Corp. Representative) ("Defendant").

///

Plaintiff's allegations follow:

On August 18, 2016, a group of prisoners, including Plaintiff, were escorted to the Receiving and Release area of Wasco State Prison to be readied for transport to Calipatria State Prison. Defendant Sgt. J. M. Mora placed a waist chain and handcuffs on the prisoners and ordered them to form two rows inside a small hallway to wait for the bus. The first prisoner entered the hallway and stood next to the right-side wall. Plaintiff entered the hallway and stood to the left of the first prisoner to form the second row. Defendant Mora objected and instructed Plaintiff to form one row first by standing behind the first prisoner "heels to toes, dicks to butts." Amd. Compl. at 8 ¶ 9.[1] Plaintiff was taken back by the sexually explicit language and complained demanding that Defendant explain, giving Defendant a chance to recant what he said. Defendant repeated his directive.

Plaintiff moved and stood heels to toes behind the first prisoner. Unfortunately, being fat caused Plaintiff's stomach to press lightly against the first prisoner, who pushed Plaintiff away saying, "Hey, what's wrong with you? Don't ever touch me again!" Amd. Compl. at 8 ¶ 12. Plaintiff explained about his stomach and apologized. Defendant heard the exchange and yelled, "I said no f***ing talking over there." Amd. Compl. at 9 ¶ 14. Plaintiff replied that Defendant's "heels to toes, dicks to butts" thing was a real problem and no man should be told to touch his genitals to another man's butt. Amd. Compl. at 9 ¶ 15. Like nothing, Defendant said, "Well, that's prison, so stop crying." Amd. Compl. at 9 ¶ 16.

The same thing happened with the next prisoner in line and almost every other. Most had to apologize for touching or bumping into someone else. When the second line was forming one of the prisoners bumped into Plaintiff when the prisoner was pushed away by another prisoner. Plaintiff told him it was not his fault, but the Defendant's fault for forcing them to line up in that way.

Suddenly, Plaintiff was being crushed hard between a door/wall and defendant Mora who

---

[1] All page numbers cited herein are those assigned by the court's CM/ECF system and are not based on Plaintiff's pagination of his materials.

was yelling, "I said no f***ing talking, a**hole, shut the f*** up!" Amd. Compl. at 9 ¶ 19. Worse, seeing Plaintiff was hurt, Defendant continued, "Yeah, that's right, you want to keep running your f***ing mouth, just keep crying and you'll really get it," before at last pushing himself off the Plaintiff and starting to walk back to where he was. Amd. Compl. at 10 ¶ 20. Plaintiff felt a great jolt of pain throughout his whole body and nearly fell but said, "You didn't have to assault me like that," to which Defendant responded, "Ha, that ain't no assault. Keep running your mouth and you'll see a real assault." Amd. Compl. at 10 ¶ 21.

In fear or panic, Plaintiff yelled out, "You all heard and saw this! He just assaulted and threatened me in front of all you guys, which makes you all witnesses!" Amd. Compl. at 10 ¶ 22. Plaintiff believes there were cameras on ceilings and walls of the Receiving and Release area of Wasco State Prison. Plaintiff then yelled out to Defendant, "I want all video footage and recordings of this too," to which Defendant replied, "There is none, sorry," and then disappeared from view. Amd. Compl. at 10 ¶ 24.

Soon after, Defendant returned to take inventory of the prisoners. When Defendant called out Plaintiff's name, Plaintiff said, "I'm the inmate you just assaulted," to which Defendant replied, "That wasn't no assault. You obviously don't know what an assault is." Amd. Cmpl. at 11 ¶ 25. Defendant instructed the prisoners to walk outside and board the bus. Plaintiff did not want to but did so when he saw other officers were on the bus.

Once the prisoners were boarded and seated, Defendant gave a speech about what he demanded on his bus. In closing, he asked the required safety questions, 1) Did anyone forget to take their medication? 2) Does anyone need medical attention? and 3) Does anyone no longer feel they could safely take the bus ride? Plaintiff immediately raised his hand and loudly told Defendant that what he had done to him in the hallway had really injured him and he needed medical attention. Defendant gave Plaintiff a hard look, looked at his fellow officers then immediately took Plaintiff off the bus and escorted him to the front of the bus where he stopped and asked Plaintiff if he really wanted to reveal what had happened, and if he truly needed medical attention. Plaintiff replied that he did and Defendant said, "Well, you know why I did it, right?" Amd. Compl. at 12 ¶ 31. Fearing further beating, Plaintiff replied, "Because I talked

and you didn't want me to talk." Amd. Compl. at 12 ¶ 32. Defendant grabbed Plaintiff's arm and escorted him back inside the prison where he informed another sergeant that Plaintiff was requesting medical attention.

A nurse soon arrived to tend to Plaintiff. She asked what had happened and Plaintiff told her everything. The nurse looked at Defendant, then at the other sergeant before writing something on a paper and giving it to the other sergeant and saying that Plaintiff can go. Shocked that the nurse was doing nothing more, Plaintiff asked if she could give him something for the pain, but she just walked away. Plaintiff was placed back on the bus and it departed.

Upon arrival at his destination, Plaintiff again requested medical attention but was given the same care when the nurse heard how it had happened. Plaintiff gathered the required administrative grievance and medical forms to complain of the issues. Plaintiff exhausted his administrative remedies. Plaintiff also filed a claim with the Government Claims Program as instructed on the Government Claims Form, but did not receive a reply.

Plaintiff continues to suffer severe pain and emotional distress.

Plaintiff requests trial by jury, appointment of counsel, costs of suit, attorney fees, a declaratory judgment, and compensatory, punitive, and hedonic damages.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v.

5

Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Excessive Force -- Eighth Amendment Claim

Plaintiff brings a claim for excessive force under the Eighth Amendment against defendant Mora. "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Hudson v. McMillian, (hereinafter "McMillian"), 503 U.S. 1, 8 (1992) (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the

core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Here, the court finds that Plaintiff states a cognizable claim against defendant Mora for use of excessive force in violation of the Eighth Amendment.

### B. Fourth Amendment Claim for Unreasonable Seizure

Plaintiff brings a Fourth Amendment claim against defendant Mora for unreasonable seizure of his person and property. The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." This right extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context.

Plaintiff's Fourth Amendment claim as to his property fails as a matter of law because prisoners do not have a Fourth Amendment right to be free from the seizure of their personal property. Hudson v. Palmer, (hereinafter "Palmer"), 468 U.S. 517, 536, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Taylor v. Knapp, 871 F.2d 803, 806 (9th Cir. 1989), cert. denied, 493 U.S. 868 (1989). A prisoner is not protected by the Fourth Amendment against the seizure, destruction, or conversion of his property. Taylor at 806.

"Imprisonment does not automatically deprive an inmate of all constitutional rights." Goldhaber v. Higgins, 576 F. Supp.2d 694, 716 (W.D. Pa. 2007) (citing Beard v. Banks, 548 U.S. 521, 126 S.Ct. 2572, 2577, 165 L.Ed.2d 697, 704 (2006)). "Nevertheless, due to the very nature of incarceration, it is difficult to characterize a search or seizure occurring in the prison context as 'unreasonable' within the meaning of the Fourth Amendment." Goldhaber, 576 Supp.2d at 716 (citing Palmer, 468 U.S. at 525–526.) "In Palmer, 468 U.S. 517, 536, . . , the Supreme Court declared that '[a] right of privacy in traditional Fourth Amendment terms is

fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.'" Goldhaber, 576 Supp.2d at 716. Since Palmer, there has been considerable uncertainty as to whether prison inmates are ever entitled to Fourth Amendment protection. Id.; Vernonia School District 47J v. Acton, 515 U.S. 646, 681, 115 S.Ct. 2386, 2404, 132 L.Ed.2d 564, 592 (1995) (O'Connor, J., dissenting) (noting that it is not clear whether people in prison categorically lack the protections of the Fourth Amendment.)

Some courts have construed Palmer to mean that prisoners are categorically excluded from the ambit of Fourth Amendment protection. Goldhaber, 576 Supp.2d at 717 (citing Vinyard v. Wilson, 311 F.3d 1340, 1349, n. 15 (11th Cir. 2002) (recognizing that the Eighth Amendment, rather than the Fourth Amendment, governs the legality of the use of pepper spray in the prison setting)); Valencia v. Wiggins, 981 F.2d 1440, 1444–1445 (5th Cir. 1993) (questioning whether prison inmates have any Fourth Amendment rights); Collins v. Kearney, 2006 WL 2038502, at *2, 2006 U.S. Dist. LEXIS 50244, at *6 (D. Del. July 18, 2006) ("The Fourth Amendment proscription against unreasonable searches and seizures does not apply in the prison context."); Stubbs v. DeRose, 2006 WL 842305, at *4, 2006 U.S. Dist. LEXIS 18490, at *11 (M.D. Pa. March 29, 2006) ("Thus, since Stubbs was in custody during the time of the alleged assaults, the Fourth Amendment does not protect her."); McCullar v. Babb, 2006 WL 623604, at *4, 2006 U.S. Dist. LEXIS 13506, at *11−12 (N.D. Ind. March 10, 2006) (indicating, by citation to substantive due process precedents, that a prison inmate's right to bodily privacy is based solely on the Due Process Clause, and that the Fourth Amendment's proscriptions are simply inapplicable in the prison setting). Other courts have indicated that prisoners retain a limited degree of Fourth Amendment protection during their periods of incarceration. Moore v. Carwell, 168 F.3d 234, 237 (5th Cir. 1999) (allowing a male prisoner to proceed with a Fourth Amendment claim where he alleged that he was strip searched by a female guard even though male guards were present and, thus, available to conduct the search themselves); Hayes v. Marriott, 70 F.3d 1144, 1146 (10th Cir. 1995) (noting that while the Fourth Amendment does not protect a prisoner's right of privacy in the context of a cell search, prisoners "retain a limited constitutional

right to bodily privacy, particularly as to searches viewed or conducted by members of the opposite sex"); United States v. Solomon, 2007 WL 1099097, at *2–4, 2007 U.S. Dist. LEXIS 26825, at *6–10 (W.D. Pa. April 11, 2007) (evaluating a Fourth Amendment claim on the basis of a prisoner's subjective expectation of privacy and society's view as to whether that expectation could be viewed as objectively reasonable); Ostrander v. Horn, 145 F.Supp.2d 614, 620 (M.D. Pa. 2001) (indicating that while inmates have no general Fourth Amendment right to be free of strip searches, such searches must be "conducted in a reasonable manner" in order to be constitutionally permissible).

The Ninth Circuit has held that the Fourth Amendment right of people to be secure against unreasonable searches and seizures "extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context." Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). Incarcerated prisoners retain a limited Fourth Amendment right to bodily privacy during strip searches, id. at 333; see also Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993) (en banc), and urinalysis drug testing of prisoners for the purpose of detecting the presence of illicit drug use has been found reasonably related to the legitimate penological goal of keeping illicit drugs out of prisons, Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997). However, the Ninth Circuit has not addressed whether convicted prisoners can be unreasonably seized after they have been incarcerated.

Here, it is undisputed that Plaintiff was incarcerated at the time of the alleged Fourth Amendment violation. This court concurs with the finding in Goldhaber that it is legally impossible for a prisoner, who is already in custody, to be subjected to a "seizure" under the Fourth Amendment. Goldhaber, 576 F. Supp.2d at 716–17. Accordingly, Plaintiff fails to state a claim under the Fourth Amendment.

### C. First Amendment Claims

The First Amendment of the United States Constitution protects the people from laws "respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. "Convicted prisoners do not

forfeit all constitutional protections by reason of their conviction and confinement in prison." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979); see Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987); Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129, 97 S.Ct. 2532, 2539-40, 53 L.Ed.2d 629 (1977)). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. (quoting Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. Id. (citing Pell v. Procunier, 417 U.S. 817, 822-823, 94 S.Ct. 2800, 2804 (1974); Procunier v. Martinez, 416 U.S. 396, 412, 94 S.Ct. 1800, 1810-11 (1974).

Plaintiff brings claims for violation of his rights to free speech and to petition the government. To prevail on these claims under the First Amendment, a prisoner must show that a defendant or a government statute, regulation, and/or established policy burdened his rights to free speech or to petition the government, without a reasonable relationship to "legitimate penological interests" O'Lone, 482 U.S. at 349 (quoting Turner, 482 U.S. at 89).

### 1. **Freedom of Speech**

Plaintiff alleges that on August 18, 2016, defendant Sergeant Mora, a transportation officer, was in charge of readying several prisoners in the Receiving and Release area of Wasco State Prison for transport to another prison. Plaintiff alleges that defendant Mora ordered him and other prisoners not to talk while they were standing in line. Under these allegations, the court finds that Defendant Mora's order for Plaintiff and other prisoners to stop talking was related to the valid penological objective of institutional safety and security, and thus did not violate Plaintiff's freedom of speech under the First Amendment. Therefore, Plaintiff fails to state a claim for violation of his freedom of speech.

### 2. **Intimidation and Threats**

Plaintiff alleges that defendant Mora intimidated and threatened him. Verbal harassment or abuse alone is not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Therefore, Plaintiff fails to state a claim based on verbal threats or intimidation.

### 3. **Denial of Right to Petition the Government**

Plaintiff alleges that his right to petition the government for a redress of grievances under the First Amendment was violated by defendant Mora. However, Plaintiff alleges no facts indicating that he was denied access to his rights to file grievances at the prison, to file cases in court, or to otherwise petition the government. Therefore, Plaintiff fails to state a claim for denial of his right to petition the government.

### 4. **Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482

(1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

///

Plaintiff claims that defendant Mora retaliated against him for exercising his rights protected under the First Amendment. Plaintiff has shown that an adverse action -- use of physical force -- was taken against him by defendant Mora. However, Plaintiff has not identified a protected right that he was exercising. As discussed above, Plaintiff did not have a protected right to continue talking when defendant Mora ordered him to stop talking while standing in line. Therefore, Plaintiff fails to state a claim for retaliation against defendant Mora.

### D. Medical Claim -- Eighth Amendment

To the extent that Plaintiff seeks to bring a medical claim, he fails to state a claim. "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).

Here, Plaintiff alleges that he was injured and suffered severe pain. This constitutes a serious medical need. However, Plaintiff fails to demonstrate that defendant Mora, or any other prison official, knew that a substantial risk of serious harm to Plaintiff's health existed and yet responded unreasonably or failed to respond to Plaintiff's serious medical need. Therefore, Plaintiff fails to state a medical claim under the Eighth Amendment.

### E. Sexual Misconduct -- Eighth Amendment Claim

Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." Wood v. Beauclair, 692 F.3d 1041, 1046 (9th Cir. 2012) (citations omitted). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Watison, 668 F.3d at 1113 (quoting McMillian, 503 U.S. at 9.) "In evaluating a prisoner's claim, courts consider whether the officials acted with a sufficiently culpable state of mind and if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Wood, 692 F.3d at 1046 (internal quotation marks and alterations omitted). The court in Watison found no sexual harassment in violation of the Eighth Amendment where a plaintiff alleged a correctional officer entered the plaintiff's cell while the plaintiff was on the toilet, began

to search the cell, ignored the plaintiff's request that he leave, rubbed his thigh against the plaintiff's thigh while sexually smiling, and left the cell laughing. Watison, 668 F.3d at 1112. Watison reasoned that the officer's "alleged wrongdoing was [not] objectively 'harmful enough' to establish a constitutional violation." Id. at 1114 (internal quotation marks omitted); see Palmer v. O'Connor, No. 2:11–CV–2927–KJN (P), 2013 WL 1326207, at *4 (E.D. Cal. Mar. 29, 2013) ("Inmate sexual harassment claims that allege brief inappropriate touching by a correctional official are generally found to be noncognizable, particularly if the alleged touching occurred pursuant to an authorized search. 'Even if plaintiff believed that there was a sexual aspect to the search, more is needed.'").

To the extent that Plaintiff claims he was subject to sexual misconduct by defendant Mora, Plaintiff fails to state an Eighth Amendment claim. "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Watison, 668 F.3d at 1112 (citing Jordan, 986 F.2d at 1525 (*en banc*)). "The alleged pain may be physical or psychological." (Id.) "Nevertheless, the inmate must objectively show that he was deprived of something 'sufficiently serious.'" Watison at 1112 (internal quotation marks and citations omitted).

Plaintiff alleges that defendant Mora ordered Plaintiff and the other prisoners to line up "heels to toes, dicks to butts," forcing them to stand against each other in a way that suggested improper and offensive sexual touching.

The court finds that while Defendant's language and directive may have been offensive to Plaintiff, however any discomfort or humiliation Plaintiff suffered from the incident does not rise to the level of "severe psychological pain required to state an Eighth Amendment claim." Watison at 1113.

Therefore, Plaintiff fails to state a cognizable Eighth Amendment claim for sexual misconduct against defendant Mora.

### F. Fourteenth Amendment Claim

Plaintiff fails to raise a claim that adequately supports a violation of his rights under the Fourteenth Amendment. Where a particular amendment provides an explicit textual source of

constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted) overruled on other grounds by Unitherm Food Systems, Inc. v. Swift -Eckrick, Inc., 546 U.S. 394 (2006); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998). In this case, the First and Eighth Amendments "provide[ the] explicit textual source of constitutional protection." Patel, 103 F.3d at 874. Therefore, the First and Eighth Amendments, rather than the Due Process Clause of the Fourteenth Amendment, govern Plaintiff's claims.

### G. State Law Claims -- Assault and Battery

Plaintiff alleges violations of assault and battery, which are state law torts. Violation of state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance, the court has found a cognizable § 1983 excessive force claim in the Complaint.

Plaintiff must also show that he satisfied the conditions required under California's Government Claims Act before filing suit. Cal. Gov't Code §§ 945.4, 950.6. The Government Claims Act requires that a tort claim for damages against a public entity or its employees be presented to the California Victim Compensation Board[2] ("the board") no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905, 910, 911.2, 950.2, 950.6. The board has forty-five days to act on a claim, or an application for leave to file a late claim; and absent an extension by agreement, if the board fails to act within forty-five days, the claim is deemed rejected, or the application is deemed denied, on the last day of the prescribed period. Cal. Gov't Code §§ 911.6, 912.4. Presentation of a written claim and action on or rejection of the claim by the board are conditions precedent to suit. Cal. Gov't Code §§ 945.4, 950.6; Shirk v. Vista

---

[2] Previously named the Victim Compensation and Government Claims Board until 2016.

Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239, 90 P.3d 116, 13 Cal.Rptr.3d 534 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). Suit must be commenced not later than six months after the date the written notice is deposited in the mail, Cal. Gov't Code § 945.6(a)(1) (quotation marks omitted); Clarke v. Upton, 703 F.Supp.2d 1037, 1043 (E.D. Cal. 2010); Baines Pickwick Ltd. v. City of Los Angeles, 72 Cal.App.4th 298, 303 (Cal. Ct. App. 1999), and if written notice is not given, suit must be commenced within two years from accrual, Cal. Gov't Code § 945.6; Baines Pickwick Ltd., 72 Cal.App.4th at 303.

Here, Plaintiff provides evidence that he properly filed a claim with the Victim Compensation Board, received no response, and timely commenced this case. Amd. Compl. at 13 ¶ 13, 35-37. Thus it appears that Plaintiff has satisfied the pleading requirements under California's Government Claims Act before filing suit, hence at this stage of the case his State claims can go forward.

Under California law, the definition of assault is "[a]n unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal.Penal Code § 240. An assault does not require either an intent to physically injure or an actual physical injury, but only the reasonable apprehension of imminent harmful touching. Kiseskey v. Carpenters' Trust for So. California, 144 Cal.App.3d 222, 232, 192 Cal.Rptr. 492 (1983).

Assault is attempted battery, while battery is a completed assault. People v. Colantuono, 7 Cal.4th 206, 216–17, 26 Cal.Rptr.2d 908, 865 P.2d 704 (1994) ("[I]t is impossible to commit battery without assaulting the victim.").

"'A battery is any willful and unlawful use of force or violence upon the person of another.' Cal.Penal Code § 242." Tekle ex rel. Tekle v. U.S., 457 F.3d 1088, 1102 (9th Cir. 2006). Under California civil law, the elements of a battery are as follows: (1) defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff. Tekle, 457 F.3d at 1102 (citing Cole v. Doe 1 thru 2 Officers of Emeryville

Police Dep't, 387 F.Supp.2d 1084, 1101 (N.D. Cal. 2005)). To establish a claim of battery by a peace officer, the plaintiff must prove that (1) the defendant intentionally touched the plaintiff, (2) the defendant used unreasonable force, (3) the plaintiff did not consent to the use of that force, (4) the plaintiff was harmed, and (5) the use of unreasonable force was a substantial factor in causing the plaintiff's harm. Judicial Council of California Civil Jury Instruction 1305. Physical injury need not be present for a claim of battery. Kiseskey, 144 Cal.App.3d at 232.

Plaintiff bears the burden of proving the officer used unreasonable force. Edson v. City of Anaheim, 63 Cal.App.4th 1269, 1272 (1998). Federal civil rights claims of excessive force are the federal counterpart of state battery claims. Id. at 1274; Munoz v. City of Union City, 120 Cal.App.4th 1077, 1102 n.6 (2004).

The court finds that Plaintiff states cognizable claims for assault and battery under California law. Because the court has found that Plaintiff also states a cognizable federal claim for excessive force under the Eighth Amendment, the court shall exercise supplemental jurisdiction over Plaintiff's state law claims for assault and battery.

### H. Relief Requested

Besides compensatory, punitive, and hedonic monetary damages, Plaintiff requests as relief costs of suit, attorney fees, and a declaratory judgment.

Plaintiff's request for declaratory relief is subsumed by Plaintiff's damages claim. See Rhodes, 408 F.3d at 565-66 n.8 (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

With regard to attorney fees, "In any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees . . . ." 42 U.S.C. § 1988(b). However, Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit. Plaintiff is representing himself in this action.

17

Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails. Gonzales v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987).

Based on the nature of the claims at issue in this action, which involve past conduct, Plaintiff is confined to seeking money damages for the violations of his federal rights.

## V. CONCLUSION AND RECOMMENDATIONS

The court finds that Plaintiff states cognizable claims against defendant Sergeant Mora for use of excessive force in violation of the Eighth Amendment and related state law claims for assault and battery, but no other claims upon which relief may be granted under § 1983. The court also finds that the deficiencies in Plaintiff's other claims, outlined above, are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. This action proceed with the First Amended Complaint, filed by Plaintiff on July 30, 2018, on Plaintiff's claims against defendant Sergeant Mora for use of excessive force in violation of the Eighth Amendment and related state claims for assault and battery, for money damages only;

2. All remaining claims be dismissed from this action, without leave to amend;

3. Plaintiff's claims for violation of free speech under the First Amendment, violation of right to petition the government under the First Amendment, retaliation under the First Amendment, verbal threats, unreasonable seizure under the Fourth Amendment, sexual misconduct under the Eighth Amendment, inadequate medical care under the Eighth Amendment, and claims under the Fourteenth Amendment be dismissed from this action based on Plaintiff's failure to state a claim upon which relief may be granted, without leave to amend; and

4. This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within

fourteen (14) days after the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file
///
objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated: **May 20, 2019**                      **/s/ Gary S. Austin**
                                                   UNITED STATES MAGISTRATE JUDGE